# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| SHONA EASLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-cv-01981-SGC |
| ) | |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, Commissioner, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION[1]

The plaintiff, Shona Easley, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability, disability insurance benefits, and supplemental security income. (Doc. 1).[2] Easley timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review. For the reasons stated below, the Commissioner's decision is due to be affirmed.

### I. FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Easley was forty-two at the time of her alleged disability onset, September 12, 2014, and forty-seven as of January 8, 2019, the date the Administrative Law Judge

---

[1] The parties consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c). (Doc. 10).

[2] Citations to the court's record refer to the document and page numbers assigned by CM/ECF and appear in the following format: (Doc. __ at __). Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear in the following format: (R. __).

("ALJ") issued the unfavorable decision now under review. (R. 37, 45-46).[3] Easily speaks English and has a seventh-grade education. (R. 65). Her past employment experience includes work as a nurse assistant, parts inspector, automobile assembler, and hair stylist. (R. 45). Easley alleged disability due to neck problems, a herniated disc in her neck, stenosis, nerve pain in her left hand, and gout in her right foot. (R. 476). At the last ALJ hearing, Easley testified she was unable to work due to pain, numbness, swelling, and tingling in her neck, back, feet, and hands; she also reported depression and anxiety that interfered with her ability to focus, concentrate, sleep, control her temper, and get along with others. (R. 69-77, 81-85).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in SGA, he or she is not disabled, and the evaluation stops. *Id*. If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii),

---

[3] This was the ALJ's second decision in this case; the first was dated September 19, 2017. (R. 193-203). The first opinion denied benefits after three hearings. (*Id.*; R. 96-167). The Appeals Council remanded, and the ALJ conducted a fourth hearing on October 10, 2018. (R. 212-14, 61-95). On January 8, 2019, the ALJ issued a new unfavorable decision. (R. 33-46). The Appeals Council denied her request for review, and the instant appeal followed. (R. 1-3).

416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971).[4] If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (the "Listings"). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the Listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled, and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work

---

[4] In *Bonner v. City of Prichard*, 6661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to October 1, 1981.

experience, to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found Easley had not engaged in SGA from her alleged onset date of September 12, 2014, through the date of the decision. (R. 37). The ALJ determined Easley had the following severe impairments: cervical degenerative disc disease, lumbar radiculopathy, depression, anxiety, osteoarthritis of the first metatarsophalangeal joints of both feet, and plantar fasciitis. (*Id.*). However, the ALJ found Easley did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (R. 37-39). At the next step, the ALJ found Easley had the RFC:

> to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; the claimant can sit for 6 hours in an 8-hour workday, stand for 6 hours in an 8-hour workday, and walk for 6 hours in an 8-hour workday; the claimant can push and pull as much as she can lift and/or carry; the claimant can climb ramps and stairs no more than occasionally but can never climb ladders, ropes, or scaffolds; the claimant can stoop, kneel, crouch, and crawl occasionally; the claimant can never work at unprotected heights; the claimant can understand, remember, and carry out simple, routine tasks; the claimant should have only occasional contact with the general public; the claimant should only have occasional contact with coworkers and supervisors, meaning that the claimant can work in proximity to others but not on a team position.

(R. 40).

The ALJ next determined Easley was unable to perform any past relevant work. (R. 45). Relying on the testimony of a Vocational Expert ("VE"), the ALJ concluded, there were a significant number of jobs in the national economy Easley could perform considering her age, education, work experience, and RFC. (R. 46). The ALJ concluded by finding Easley was not under a disability, as defined in the Social Security Act, at any time through the date of the January 8, 2019 decision. (*Id.*). After Easley filed the instant appeal, the Commissioner awarded her benefits on a subsequent application, finding her disabled as of January 9, 2019—the day after the ALJ's decision. (Doc. 13-1).

## II.  STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   DISCUSSION

On appeal, Easley asserts the ALJ erred by: (1) affording improper weight to

a treating physician's opinions; (2) affording improper weight to the opinion of an examining psychologist; (3) not finding her disabled under the Listings; and (4) failing to satisfy the substantial evidence standard. (Doc. 12 at 1). Also pending is Easley's motion to remand, premised on the Commissioner's subsequent award of disability benefits and finding she was disabled as of the day after the ALJ's decision. (Doc. 13).

### A. Dr. Tariq

An ALJ must articulate the weight given to different medical opinions in the record and his supporting reasons. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" to discount a treating physician's opinion exists where the: "(1) treating physician's opinion was not bolstered by the evidence; (2)

evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) ("good cause" existed where the opinion was contradicted by other notes in the physician's own record). In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).

Also, opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); *see also Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) (although a claimant's physician may state he is disabled or unable to work, "the agency will nevertheless determine disability based upon the medical findings and other evidence."). The court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative because the ALJ bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

At issue here are two opinions—expressed on fill-in-the-blank physical capacity forms—from Muhammad Tariq, M.D., Easley's treating physician. (R. 868, 1418). On December 18, 2015, Dr. Tariq circled answers on a form indicating his opinions that Easley was only capable of sitting upright, standing, and walking for less than fifteen minutes at one time. (R. 868). Dr. Tariq also circled an answer indicating Easley's medical conditions would require her to lie down, sleep, or sit with her legs elevated for four hours out of an eight-hour workday. (*Id.*). Although difficult to decipher, it appears Dr. Tariq's opinions on Easley's limitations were based on lumbago and cervical spondylosis. (*Id.*).

On September 11, 2018, Dr. Tariq completed a second form. (R. 1418). As with the first, Dr. Tariq circled answers indicating Easley could sit upright and stand for less than fifteen minutes at one time. (*Id.*). Regarding the amount of time Easley would need to spend lying down, sleeping, or sitting with her legs elevated during an eight-hour day, Dr. Tariq circled two contradictory answers: less than fifteen minutes and six hours. (*Id.*). Dr. Tariq also estimated Easley would be off-task 70% of the time and would miss fifteen out of thirty workdays due to her symptoms. (*Id.*). Dr. Tariq stated Easley's limitations were due to lumbago, carpal tunnel syndrome, osteoarthritis, and depression. (*Id.*). The ALJ gave little weight to Dr. Tariq's opinions, concluding they were not consistent with treatment records or the objective medical evidence. (R. 44). This conclusion regarding Dr. Tariq's opinions followed

the ALJ's analysis of the medical evidence regarding Easley's physical impairments, summarized below.  (R. 41-43).

The ALJ's review began with Easley's cervical spine problems and records from Terry Andrade, M.D., a surgeon who evaluated Easley's neck pain at the time of her alleged disability onset.  (R. 41).  Dr. Andrade diagnosed herniated cervical discs at C4-C5 and C5-C6 and on November 7, 2014, performed an anterior cervical decompression of C4-C6 with discectomy, neural foraminotomy, and bilateral uncovertebral arthrodesis of C4-C6 with allograft bone fusion and anterior cervical instrumentation with Medtronic Atlas plate.  (R. 834).

Weeks after surgery, Dr. Andrade found Easley had 5/5 muscle strength in all muscle groups, normal grip strength, intact and symmetrical sensation and proprioception in her arms and legs, normal deep tendon reflexes, normal gait, mildly limited range of motion in the cervical spine, and bilaterally negative Hoffman's response, Spurling's maneuver, and Tinel's testing.  (R. 810-811).  By March 12, 2015, Dr. Andrade noted Easley's back pain was "much improved" and that her left arm numbness and pain had resolved.  (R. 1100).  The ALJ noted postoperative x-rays showed a successful fusion of C4-C6, with no evidence of new intraspinal pathology.  (R. 41; *see* R. 784-85).  The ALJ also noted imaging from 2014 and 2015 showing the cervical spine hardware was intact and well-aligned, no acute bony abnormality, and minor disc space height loss at C3-C4 and C6-C7

levels, as well as minor facet degenerative joint disease. (R. 41; *see* R. 990-92). Finally, the ALJ discussed a 2018 MRI showing only minimal degenerative changes with no spinal canal or neural foraminal stenosis. (R. 41; *see* R. 1313).

Regarding Easley's lower back pain, the ALJ discussed X-rays from May 2017, showing minimal lower facet and SI joint sclerosis but no additional focal or acute pathology. (R. 41; *see* R. 1220). The ALJ also cited notes from physical examinations revealing intact and symmetrical sensation, normal muscle tone and strength in both arms and legs, no focal neurological deficits, and normal gait, station, and range of motion in the back. (R. 41; *see, e.g.*, R. 941, 956, 965, 973, 982-83, 1082-83, 1090, 1095-96, 1101-02, 1143, 1151-52, 1163, 1170-71).

The ALJ also discussed the October 26, 2017 independent medical evaluation completed by Jarrod Warren, M.D., at Easley's request. (R. 42). Dr. Warren reported difficulty completing the assessment due to Easley's complaints of pain. (R. 1246). While Dr. Warren noted Easley appeared uncomfortable, he opined her "appearance and mannerisms seem over-dramatized." (*Id.*). Dr. Warren noted Easley had no acute focal neurological deficits and, while she reported numbness to touch in both legs, she did not exhibit the expected dermatomal association. (R. 1245).

Finally—regarding Easley's physical ailments—the ALJ discussed the April 30, 2018 examination findings of Thomas Lackey, M.D. (R. 42-43). Dr. Lackey

11

found Easley exhibited: (1) normal gait and was able to perform heel and toe walking; (2) normal straight leg raise testing; (3) normal sensation; and (4) normal tendon reflexes. (R. 1252). As for muscle strength and tone, Dr. Lackey found Easley had normal muscle tone in her arms and legs but varying levels of strength. (*Id.*). Specifically, Dr. Lackey found: (1) normal, 5/5 strength in the upper and lower extremity flexors; (2) slightly diminished, 4/5 strength in the deltoids and both upper and lower extremity extensors; and (3) significantly diminished, 1/5 strength in hip flexion. (*Id.*).[5]

The ALJ's accurate recitation of the foregoing evidence supports a finding contrary to the extreme limitations Dr. Tariq expressed. Accordingly, the ALJ did not err in rejecting Dr. Tariq's opinions. *See Bloodsworth*, 703 F.2d at 1240.

### B. Dr. Nichols

June Nichols, Psy.D., performed a consultative examination on December 6, 2006. (R. 1121-27). A Wechsler Adult Intelligence Scale test Dr. Nichols administered showed Easley's full-scale IQ was 64, placing her in the bottom 1%. (R. 1123). Dr. Nichols considered this a valid IQ score but noted Easley's pain during the test could have yielded a score "lower than her true ability." (*Id.*). Dr.

---

[5] The ALJ also analyzed treatment records regarding Easley's foot pain and plantar fasciitis. (R. 42). Because Dr. Tariq's opinions were not based on Easley's foot ailments, recitation of the evidence and analysis is unnecessary. The ALJ noted an assessment of Ashvini Sengar, M.D, finding Easley was "completely ambulatory." (R. 1222).

Nichols diagnosed Easley with major depressive disorder, single episode, severe, without psychotic features, and mild intellectual disabilities. (*Id.*). As to impacts on Easley's functional abilities, Dr. Nichols opined she would be: (1) mildly limited in her ability to understand, remember, and carry out simple instructions, as well as to make judgments on simple work-related decisions; and (2) moderately limited in her ability to understand, remember, and carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with the public, supervisors, and co-workers, as well as to respond appropriately to usual work situations and changes in work routines. (R. 1125-26). At the last ALJ hearing, Nicole Martinez, Psy.D., testified as a medical expert. (R. 85-89). Dr. Martinez did not examine Easley, and her testimony was based on her review of the medical record. (R. 86). Dr. Martinez's opinions regarding Easley's functional limitations were consistent with those of Dr. Nichols. (R. 88).

The ALJ incorporated Dr. Nichols's opinions regarding Easley's functional abilities in assessing whether she satisfied a listing for mental impairment. (R. 38-39). The ALJ also accounted for Dr. Nichols's opinions in determining Easley's RFC. (*See* R. 43). However, the ALJ gave little weight to Dr. Nichols's diagnosis of mild intellectual disability, stating it was inconsistent with her work history and with Dr. Martinez's testimony. (R. 44).

Easley contends the ALJ erred in rejecting Dr. Nichols's opinion, but the basis of Easley's argument is unclear. (Doc. 12 at 32-39). The vast majority of Easley's principal briefing of this issue consists of block quotes of opinions issued by various courts; her reply is merely a verbatim repetition of portions of her prior briefing. (*Id.*; Doc. 15 at 3-7). It does appear Easley argues the ALJ's rejection of Dr. Nichols's opinion was improper under the reasoning of *Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1995), because she was the only professional who actually examined Easley regarding her mental impairments. (Doc. 12 at 34-39).

However, the only portion of Dr. Nichols's report to which the ALJ assigned little weight was her diagnosis of mild intellectual disability. (R. 44). Crucially, the ALJ accepted all of Dr. Nichols's opinions regarding the impact of Easley's mental impairments on her ability to function. Thus, to the extent Easley may contend the ALJ's rejection of Dr. Nichols's diagnosis tainted her RFC assessment, the argument fails. *E.g. Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."). While the improper omission of a diagnosis could affect analysis of the Listings, it did not here, as discussed below.

### C.   Listing 12.05

Next, Easley contends the ALJ erred by refusing to find she was entitled to

14

benefits under Listing 12.05(C). (Doc. 12 at 39-42). As an initial matter, Easley's briefing cites to an older version of the Listings, specifically to "Listing 12.05 Mental Retardation." (Doc. 12 at 39). Under the old version of the regulations, a claimant satisfied Listing 12.05(C) by showing a full-scale IQ of 60-70 and another physical or mental impairment imposing significant work-related limitations. *See Williams v. Saul*, No. 19-412, 2020 WL 6704575 at *5-*7 (S.D. Ala. Nov. 13, 2020). Those rules were revised, effective January 17, 2017, and the new rules applied to claims pending as of that date, including Easley's. Soc. Sec. Admin., *Revised Medical Criteria for Evaluating Mental Disorders*, 81 F.R. 66138–01, 2016 WL 5341732 (Sept. 26, 2016) (effective Jan. 17, 2017). Accordingly, any argument regarding the application of Listing 12.05(C) is irrelevant.

The Commissioner's brief does cite the applicable, current Listing: Listing 12.05 Intellectual Disorder. (Doc. 14 at 15-16). The relevant portions of Listing 12.05(B), as it existed at the time of the ALJ's decision, were satisfied where three conditions were met:

> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>
>> a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>>
>> b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score)

>    of 70 or below on an individually administered standardized test of general intelligence; and

> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
>> a. Understand, remember, or apply information (see 12.00E1); or
>>
>> b. Interact with others (see 12.00E2); or
>>
>> c. Concentrate, persist, or maintain pace (see 12.00E3); or
>>
>> d. Adapt or manage oneself (see 12.00E4); and
>
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

In analyzing the Listings, the ALJ discussed Listing 12.04 (Depressive, Bipolar, and Related Disorders) and Listing 12.06 (Anxiety and Obsessive-Compulsive Disorders); he did not discuss Listing 12.05(B). (R. 37-39). This is understandable given that, during the last hearing, Easley's counsel specifically withdrew any contention that she satisfied Listing 12.05. (R. 94) ("In our pre-hearing brief we argued that the claimant met listing 12.05B and based on the expert's testimony we withdraw that argument and our argument instead is that she does not have the physical residual functional capacity to perform full employment.").

Even if counsel had not waived its application, Listing 12.05 does not provide Easley any relief. Listing 12.05 has the same "Paragraph B" criteria regarding adaptive functioning as Listings 12.04 and 12.06, which the ALJ did discuss. In addressing adaptive functioning deficits, the ALJ correctly noted the only objective medical evidence—including Dr. Nichols's report—showed Easley's adaptive functioning was only mildly or moderately impaired. (R. 39). The ALJ also properly relied on Easley's work history as evidence of her adaptive functioning abilities. *E.g. Hunt v. Comm'r Soc. Sec. Admin*, 631 F. A'ppx 813, 816 (11th Cir. 2015). The ALJ's conclusion that Easley did not satisfy a Listing was supported by substantial evidence.

## D. <u>Substantial Evidence</u>

Easley's contention that the ALJ's decision is not supported by substantial evidence largely relies on arguments this opinion has already rejected, both explicitly and implicitly. Specifically, Easley asserts the ALJ erred in affording little weight to the opinions of Dr. Tariq and Dr. Nichols and, in posing a hypothetical to the VE, did not include Easley's low IQ score or Dr. Tariq's limitations. (Doc. 12 at 43-44). As already discussed, the ALJ did not err in her treatment of Dr. Tariq's or Dr. Nichols's opinions. Additionally, the hypothetical the ALJ posed to the VE included all of the limitations from Easley's RFC, including those imposed by Dr.

Nichols. The ALJ did not err by excluding limitations she had already properly rejected. *See Crawford*, 363 F.3d at 1161.

### E. Motion to Remand

Finally, Easley filed a separate motion to remand based on the Commissioner's subsequent decision finding she was disabled, with an onset date one day after the ALJ's decision in this case. (Doc. 13). As Easley acknowledges in her motion, the Eleventh Circuit has held that a subsequent favorable decision does not, by itself, support remand. (Doc. 13 at 1) (citing *Hunter v. SSA*, 808 F.3d 818, 820 (11th Cir. 2015)). Rather, Easley appears to argue that, if this case were remanded due to a lack of substantial evidence, extra scrutiny would be required on remand. (*See* Doc. 13 at 3). Having concluded the Commissioner's decision was supported by substantial evidence and in accord with applicable law, this argument fails. Accordingly, the motion to remand will be denied.

## IV. CONCLUSION

For all of the foregoing reasons, the Commissioner's decision will be affirmed, and the motion to remand will be denied, both by separate order.

**DONE** this 28th day of September, 2021.

/s/ Staci G. Cornelius
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE